# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. MAHRU and HONEYLAND PRODUCTIONS PROFIT SHARING PLAN, ) ) ) | |
| Plaintiffs, ) | No. 06 C 4329 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| REZMAR CORPORATION, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, William M. Mahru ("William") and Honeyland Productions Profit Sharing Plan ("Honeyland"), filed suit against Defendant, Rezmar Corporation ("Rezmar") alleging breach of contract. Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint.

## BACKGROUND

A reading of Plaintiffs' Complaint supports the following summary of the alleged operative conduct of the parties.

William and Zane Buzby are the trustees of Honeyland, a pension plan. Rezmar, is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois. Plaintiffs, Defendant, and Defendant's two shareholders – Daniel S. Mahru ("Daniel") and Antoin S. Rezko ("Rezko") – and others entered into a written contract entitled "Operating Agreement of 4300 W. Peterson, L.L.C." ("Operating Agreement"). The purpose of the Operating Agreement and the creation of 4300 W. Peterson, L.L.C. ("LLC") was to develop

a real estate project. William signed the Operating Agreement individually and on behalf of Honeyland.[1]

Pursuant to the Operating Agreement, Plaintiffs purchased two Class A Units in the LLC. Also pursuant to the Operating Agreement, Daniel and Rezko each became Class B Members of the LLC. Section 6.10(a) of the Operating Agreement provides:

> 6.10 Put Right
>
> (a) On June 1, 2003, and at any time prior to August 1, 2003, and during the ten days of each calendar quarter thereafter (*e.g.* the first to tenth of the following months: October, January, April and July), each Class A Member shall have the right, but not the obligation, to sell all of the Units owned by such Class A Member to the Class B Members, and the Class B Members shall have the obligation, if so requested by such Class A member, to purchase all of the Units owned by such Class A member ("Put Right"). Unless otherwise agreed to by the Class B Members, the Class B Members shall purchase the Class A Member's Units in accordance with their Relative Interests. The Class B Members, may, in their sole discretion, require that the LLC purchase the Class A Member's Units.

On October 22, 2003, Defendant, through its Chief Executive Officer, Mahru, made a written offer to repurchase Plaintiffs' interest in the LLC. The offer states, in pertinent part:

> A. You have invested $200,000 in this project as a Limited Partner.
>
> B. To date, you have received interest payments in the amount of 20%, I believe, through the month of March, 2003 (paid in April). We are currently in the process of refinancing this project and, upon refinance, we will repurchase your interest, pay you your $200,000 investment, and your 20% interest up to the date of repurchase.

---

[1] The signature page of the Operating Agreement shows that William Mahru signed on behalf of a Zane Buzby Pension Plan, not Honeyland. However, Plaintiffs explain in their Complaint that Zane Buzby Pension Plan is a misnomer and William Mahru's signature really refers to Honeyland.

2

Plaintiffs accepted Defendant's offer and, in reliance thereon, did not exercise their put right pursuant to Section 6.10 of the Operating Agreement.

Defendant thereafter refinanced the real estate project on two separate occasions without informing Plaintiffs. Subsequently, upon learning the project was refinanced, Plaintiffs tendered their Class A Units in the LLC to Defendant. However, Defendant failed and refused to repurchase the Class A Units.

Plaintiffs allege that Defendant's failure and refusal to repurchase the Class A Units after it refinanced the project constitutes a breach of the agreement between Plaintiffs and Defendant regarding Defendant's written offer made on October 22, 2003. Plaintiffs seek in damages $330,000 plus $105.59 per diem for each day from June 30, 2006 until the date of judgment, costs of this action, and reasonable attorney's fees.

## ANALYSIS

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A filing under the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). A plaintiff is not required to plead the facts or the elements of the claim, with the exceptions found in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud, mistake, etc.). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006) (*Kolupa*).

Defendant asserts that the Complaint should be dismissed because, according to the Operating Agreement, only Class B Members have a repurchase obligation once Class A

3

Members exercise their put rights; only Daniel and Rezko are Class B Members, not Defendant Rezmar. Alternatively, Defendant asserts that even if Rezmar does have a repurchase obligation, the Complaint should be dismissed because Plaintiffs did not sufficiently exercise their put rights pursuant to the Operating Agreement. Finally, Defendant asserts that its Motion to Dismiss should be granted because William has no standing to sue since he is not a party to the Operating Agreement.

However, Defendant's asserted grounds to dismiss the Complaint assume Plaintiffs' claim is based on a breach of the Operating Agreement. That is not the contract Plaintiffs allege was breached. According to the Complaint, Plaintiffs allege that Defendant breached a contractual obligation to purchase Plaintiffs' Class A Units, an obligation formed when Plaintiffs accepted Defendant's written offer dated October 22, 2003. This contract, as alleged, is separate and distinct from the Operating Agreement.

Defendant, in its Reply Memorandum, emphasizes that Plaintiffs state in their Complaint that they "accepted defendant's offer and *in reliance thereon did not exercise their put right pursuant to Section 6.10 of the Operating Agreement*" (emphasis added in Defendant's Reply Memorandum). Based on this pleading, Defendant claims that the purported contract between Plaintiffs and Defendant is invalid because Plaintiffs' consideration in accepting Defendant's offer was given not to the Defendant but to third parties, Class B Members Daniel and Rezko. Defendant argues that consideration requires that Defendant request Plaintiffs to forgo their put rights against Daniel and Rezko in exchange for Defendant's offer to repurchase; this was not alleged.

Defendant's contention regarding the absence of consideration is misplaced. According to the Complaint, Plaintiffs simply had a right to sell their Class A Units to Class B Members

4

should they have chosen to do so. Class B Members are nothing more than potential purchasers. Plaintiffs' consideration to Defendant is the forbearance by Plaintiffs to exercise their put rights (or the forbearance to sell their Class A Units to anyone else). Plaintiffs' statement that they relied on Defendant's offer in not exercising their put rights is a statement of Plaintiffs' forbearance and provides consideration to support the Plaintiffs' claim of a contract based on Plaintiffs' acceptance of Defendant's offer of October 22, 2003. Therefore, Defendant's Motion to Dismiss is denied on this basis.

Also, Defendant, in its Reply Memorandum, asserts that William does not have standing to file suit for a breach of contract based on the October 22, 2003 letter because, pursuant to the Operating Agreement, William is not an owner of Class A Units. In their Complaint, Plaintiffs, collectively, state that they are Class A Members. Determining whether William is a Class A Member requires a factual determination that is improper at the pleadings stage. Therefore, Defendant's Motion to Dismiss on the grounds that William has no standing is denied.

Contrary to Defendant's allegations, Plaintiffs have sufficiently pleaded a breach of contract claim. To survive a motion to dismiss, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Kolupa*, 438 F.3d at 714. In their Complaint, Plaintiffs state that they received a written offer, dated October 22, 2003, from Defendant to purchase their Class A Units once Defendant refinanced its business. Plaintiffs state that they accepted that offer. Upon learning that Defendant refinanced, Plaintiffs tendered their Class A Units; but Defendant refused to purchase them. As a result, Defendant breached the contract; and Plaintiffs suffered damages. These pleadings sufficiently put Defendant on notice of Plaintiffs' claim and enable Defendant to investigate the matter. *See United States v. All Meat and Poultry Prods. Stored at*

*LaGrou Cold Storage*, 470 F. Supp. 2d 823, 827 (N.D. Ill. 2007) (stating in the complaint the contracts at issue and the time and a few details of the breach provided the defendant with more than enough "tidbits" to investigate). Therefore, Defendant's Motion to Dismiss Plaintiffs' breach of contract claim is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is denied.

Dated: May 23, 2007

JOHN W. DARRAH
United States District Court Judge